UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

AIMIE HUNTINGTON, et al.,

Plaintiff(s),

v.

YATE HOLDINGS, LLC d/b/a CANYON VISTA POST-ACUTE, et al.,

Defendant(s).

Case No. 2:21-CV-1809 JCM (EJY)

ORDER

Presently before the court is plaintiff Aimee Huntingon's ("Huntingon") motion to remand, (ECF No. 13). Defendant Yate Holdings, LLC ("Yate Holdings") filed a response, (ECF No. 16), to which Huntingon replied (ECF No. 17).

Also before the court is Yate Holdings' motion to dismiss (ECF No. 9), in which defendant Southern Hills Investments, LLC joined (ECF No. 11). Huntingon filed a response (ECF No. 12) to which Yate Holdings replied (ECF No. 14).

## I. Background

The instant action arises from state law tort claims alleging Yate Holdings acted negligently while caring for Chardra Bryant ("decedent"). (ECF No. 3-2). On September 2, 2021, Huntingon filed her complaint in Nevada state court. (*Id.* at ¶ 1). Yate Holdings timely removed the matter to this court on September 29, 2021. (ECF No. 1). Huntingon now moves to remand. (ECF No. 13).

In the complaint, Huntingon alleges that Yate Holdings was negligent in its care for the decedent, failed to develop or follow proper safety protocols in response to the COVID-19 pandemic, and made misrepresentations about the safety measures being taken at the facility.

(ECF No. 3-2 at ¶ 31, 78, 145). Huntingon alleges that Yate Holdings' negligence and misrepresentation caused decedent to contract, and later pass away from COVID-19 while she was a patient in one of Yate Holdings' skilled nursing facilities. (*Id.* at ¶ 32).

## II. Legal Standard

### A. Removal and Remand

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

Because the court's jurisdiction is limited by the constitution and 28 U.S.C. §§ 1331, 1332, "[t]he threshold requirement for removal under 28 U.S.C. § 1441 is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court." *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 861 (9th Cir. 2003) (quoting *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998)). Thus, "it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Abrego Abrego v. Dow Chem Co.*, 443 F.3d 676, 684 (9th Cir. 2009).

Upon notice of removability, a defendant has thirty days to remove a case to federal court once he knows or should have known that the case was removable. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (citing 28 U.S.C. § 1446(b)(2)). A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c).

On a motion to remand, the removing defendant must overcome the "strong presumption against removal jurisdiction" and establish that removal is proper. *Hunter*, 582 F.3d at 1042 (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992) (per curiam)). Due to this strong presumption against removal jurisdiction, the court resolves all ambiguity in favor of remand to

state court. *Id.*

**B. Preemption and Federal Question Jurisdiction**

The "well-pleaded complaint rule" governs federal question jurisdiction. This rule provides that district courts can exercise jurisdiction under 28 U.S.C. § 1331 only when a federal question appears on the face of a well-pleaded complaint. *See, e.g., Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Id*. Moreover, "an anticipated or actual federal defense generally does not qualify a case for removal[.]" *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

The well-pleaded complaint rule, however, is not without exception. The "complete preemption doctrine" allows district courts to exercise federal question jurisdiction over state law claims when a federal statute completely preempts the relevant state law. *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000) (citation omitted). Courts consider the factual allegations in the complaint and the petition of removal to determine whether federal law completely preempts a state law claim. *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983).

Ordinary preemption is a defense and does not support Article III subject matter jurisdiction, a prerequisite for removal. *See Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804 (1986). In contrast, complete preemption is "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin General Hosp. v. Modesto & Empire Traction Co*., 581 F.3d 941, 945 (9th Cir. 2009) (quoting *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008) (internal quotations omitted). Complete preemption is "rare." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2008).

Congressional intent is the "ultimate touchstone" of any preemption analysis, express or implied. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96, 98 (1992). In determining Congressional intent to preempt, a court must "begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative

James C. Mahan
U.S. District Judge

purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). "The first and most important step in construing a statute is the statutory language itself." *Royal Foods Co., Inc. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1106 (9th Cir. 2001) (citing *Chevron USA v. Natural Res. Def. Council*, 467 U.S. 837, 842–44 (1984)).

## III. Discussion

### A. Preemption and the PREP Act

The primary issue here is whether the PREP Act[1] requires Huntingon's state law tort claims be removed to federal court. Huntingon's claims derive from state law and allege Yate Holdings acted negligently in failing to establish and follow proper safety protocols for isolating symptomatic COVID-19 patients, *inter alia*. (ECF No. 13 at 7). Yate Holdings argues that this court's jurisdiction is proper because the PREP Act "completely preempts" all state tort claims against "covered persons" using "covered countermeasures." (ECF No. 13 at 11).

"Covered countermeasure" is defined by statute as (A) "a qualified pandemic or epidemic **product**; (B) a **security countermeasure**; (C) a **drug**, **biological product**, or **device** that is authorized for emergency use in accordance with…the Federal Food, Drug, and Cosmetic Act;

[1] The Public Readiness and Emergency Preparedness Act ("PREP") was enacted on December 30, 2005, as Public Law 109-148, Division C, Section 2. The PREP Act authorizes the Secretary of Health and Human Services ("HHS Secretary") to issue a Declaration to provide liability immunity to certain individuals and entities ("Covered Persons") against any claim of loss caused by, arising out of, relating to, or resulting from the manufacture, distribution, administration, or use of medical countermeasures ("Covered Countermeasures"), except for claims involving "willful misconduct" as defined in the PREP Act. Under the PREP Act, a Declaration may be amended as circumstances warrant. 85 Fed. Reg. 21,012 (April 15, 2020). 42 U.S.C. § 247d-6d(b)(4). The primary thrust of the PREP act with respect to liability protections is as follows:

> Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.
>
> 42 U.S.C. § 247d-6d(a)(1).

James C. Mahan
U.S. District Judge

or (D) a **respiratory protective device** that is approved by the National Institute for Occupational Safety and Health…and that the Secretary determines to be a priority for use during a public health emergency declared under section 247d of this title." 42 U.S.C. § 247d-6d (emphasis added).

Even assuming the PREP Act enjoys "complete preemption" status and Yate Holdings is a "covered person" under the statute,[2] it is immaterial since the court recently held in *Ossowski v. St. Joseph Transitional Rehab. Center*, 2:21-cv-01417-JCM-BNW, at *6 (D. Nev. Oct. 6, 2021), that isolation and social distancing are not "covered countermeasures" under the plain meaning of the statute.

To support its contrary position, Yate Holdings cites the similarly situated case *Rachal v. Natchitoches Nursing & Rehabilitation Center, LLC*, W.D. LA 2021 WL 5449053. (ECF No. 16 at 13). Although the *Rachal* court found the PREP Act to be a "complete preemption" statute, the court also held that "if all or some of the complaint's allegations do not relate to covered countermeasures then federal courts are without subject matter jurisdiction." *Rachal*, 2021 WL 5449053, at *6.

Yate Holdings similarly relies on the Secretary of Health and Human Services' declaration invoking the PREP Act in response to the COVID-19 pandemic, as well as the declaration's subsequent Advisory Opinion 21-01 which states the PREP Act is a preemption statute. (ECF No. 16 at 12).[3] However, none of the HHS Secretary Declarations or Amendments, including those issued after *Ossowski*, have identified isolation protocols as covered countermeasures.[4]

---

[2] The court does not comment on these points since they are unnecessary for the holding.

[3] The court does not comment on this point because it is not necessary for the holding.

[4] *See generally* Amendment to Declaration under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg, 21,012 (Apr. 15, 2020); Second Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 35,100 (June 8, 2020); Third Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 52,136 (Aug.

Moreover, although Yate Holdings argues the PREP Act should apply because Huntingon's complaint mentions items that *could* be considered "covered countermeasures," such as personal protective equipment (PPE) (ECF No. 18 at 15-16), the court disagrees. The complaint's primary allegations surround the facility's failure to keep healthy residents from contracting and spreading COVID-19. The complaint's ancillary references to PPE are insufficient to convert Huntingon's purely state-law claims into federal ones based on the PREP Act. (*See generally* ECF No. 3-2). Indeed, most of the allegations in the complaint do not relate to purported "covered countermeasures." (*Id.*).

Again, as the court held in *Ossowski*, isolation policies and procedures are not "covered countermeasures" under a plain meaning of the PREP Act. By so holding, the court joins "nearly every federal district court" in rejecting similar creative attempts to manufacture federal-court jurisdiction under the auspices of the PREP Act.[5] *Maglioli v. Alliance HC Holdings, LLC*, 16 F.4th 393, 402 (3d Cir. 2021) (collecting cases).

**B. Federal Officer Jurisdiction**

Yate Holdings further asserts federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), but this argument is equally unavailing. Yate Holdings does not act under "specific direction of a federal officer" by virtue of complying with federal law under the PREP Act. *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007). It is well established that *Watson* stands for the

---

24, 2020); Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79,190 (Dec. 9, 2020); Fifth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 7,872 (Feb. 2, 2021); Seventh Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 14,462 (Mar. 16, 2021); Eighth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 41,977 (Aug. 4, 2021); Ninth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 51,160 (Sept. 14, 2021); Tenth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 87 Fed. Reg. 51,982 (Jan. 07, 2022).

[5] This district alone has remanded three similar cases in recent months (post-*Ossowski*) where defendants attempted to remove based on the PREP Act or federal-officer removal statute. *See Shankle v. Heights of Summerlin, LLC*, 2021 WL 5763553 (D. Nev. Dec. 1, 2021) (collecting cases from this circuit); *Ostrander v. Heights of Summerlin, LLC*, 2021 WL 5763554 (D. Nev. Dec. 1, 2021); *Smith v. Heights of Summerlin, LLC*, 2021 WL 5763556 (D. Nev. Dec. 1, 2021).

proposition that a private firm's compliance (or noncompliance) with federal laws and regulations does not by itself fall within the scope of the phrase "acting under" a federal "official." *Id* at 143. Otherwise, a "contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." *Id.*

Yate Holdings attempts to distinguish its position from *Watson*, instead comparing itself to Tyson Foods in *Wazelle v. Tyson Foods, Inc.* 2021 WL 2637335 (N.D. Tex. Jun. 25, 2021) and *Fields v. Brown*, 2021 WL 510620 (E.D. Tex. Feb. 11, 2021). (ECF No. 18 at 27). In each of these cases, the plaintiffs were employees of Tyson Foods' Texas meat packing plants. *Wazelle*, 2021 WL 26373352, at *1; *Fields*, 2021 WL 510620, at *390. They claimed Tyson Foods negligently caused them to contract COVID-19 by forcing them to continue working, despite Texas's stay-at-home order. *Id*.

In both cases, Tyson Foods successfully removed the suit to federal court on federal officer grounds. *Wazelle*, 2021 WL 26373352, at *2; *Fields*, 2021 WL 510620, at *390-91. The courts found Tyson Foods qualified for removal because the federal government had designated Tyson Foods and other components of the food and agricultural sector as "critical infrastructure" in response to the COVID-19 pandemic. *Wazelle*, 2021 WL 26373352, at *4; *Fields*, 2021 WL 510620, at *393. The courts further held Tyson Foods was "acting under" the direction of a federal officer and "working directly with the Department of Agriculture. . . to guarantee that there was an adequate food supply" during the pandemic. *Wazelle*, 2021 WL 26373352, at *3; *Fields*, 2021 WL 510620, at *393.

Here, Yate Holdings argues that because the federal government similarly identified medical and healthcare services as "critical infrastructure" this entitles them to federal officer status. (ECF 16 at 27) But there are key factual differences between Yate Holdings' situation and that of Tyson Foods.

First, after being designated as "critical infrastructure," Tyson Foods participated in a meeting between President Trump and other food industry executives "to discuss the stability of the supply chain." *Wazelle*, 2021 WL 26373352, at *3; *Fields*, 2021 WL 510620, at *392.

James C. Mahan
U.S. District Judge

Second, Tyson Foods was "in close contact with officials at the U.S. Department of Homeland Security and the U.S. Department of Agriculture regarding continued operations." *Wazelle*, 2021 WL 26373352, at *4; *Fields*, 2021 WL 510620, at *392. Third, the United States Food Safety and Inspection Service (FSIS) had employees staffed onsite at Tyson Foods' meatpacking plants to ensure they maintained operations. *Wazelle*, 2021 WL 26373352, at *4; *Fields*, 2021 WL 510620, at *392.

Yate Holdings does not assert a similarly close advisory relationship with any federal agencies, negating its argument of "acting under" a federal officer's direction in "an effort to help assist, or carry out, the duties and tasks of the federal superior." Instead, Yate Holdings merely asserts that the Centers for Disease Control (CDC) and Centers for Medicare and Medicaid Services (CMS) issued various edicts to long term care facilities to mitigate the spread of the virus. (ECF No. 16 at 28). CMS also required COVID-19 related weekly reporting and subjected long term care facilities to fines and penalties for noncompliance. *Id.*

Yate Holdings' compliance (or noncompliance) with these regulations, however, is more akin to *Watson* because Yate Holdings was merely required to follow federal law and regulation. Yate Holdings has not shown that its relationship with the federal agencies involved "subjection, guidance, or control" beyond mere compliance with the law. *Watson*, 551 U.S. at 151. Therefore, this case was not removable under 28 U.S.C. § 1442(a).

**Conclusion**

Accordingly, and pursuant to the foregoing,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff Huntingon's motion to remand (ECF No. 13) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Yate Holdings' motion to dismiss (ECF No. 12) be, and the same hereby is, DENIED as moot and without prejudice to its refiling in state court.

. . .

. . .

. . .

. . .

The clerk of court is directed to REMAND this case back to the Eighth Judicial District Court for Clark County, Nevada; Case Number A-21-840464-C, and CLOSE THIS CASE.

DATED February 18, 2022.

UNITED STATES DISTRICT JUDGE